# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2957

_____

United States of America,      *
    *
        Appellee,     *
    *    Appeal from the United States
     v.     *    District Court for the
    *    Eastern District of Arkansas.
Bobby Glenn Banks,     *
    *
        Appellant.     *

_____

Submitted: April 12, 2007
Filed: July 18, 2007

_____

Before WOLLMAN, BEAM, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bobby Glenn Banks was convicted of conspiring to distribute more than five kilograms of cocaine and fifty grams of cocaine base, in violation of 21 U.S.C. § 846, using a communications facility in committing a federal drug offense, in violation of 21 U.S.C. § 843(b), aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2, distribution of cocaine base, in violation of 21 U.S.C. § 841(a), and endeavoring to intimidate an officer of the United States, in

violation of 18 U.S.C. § 1503(a). The district court[1] sentenced him to fifty-five years' imprisonment. He appeals from his convictions and his sentence. We affirm.

I.

Although Banks's trial lasted several days and the government called dozens of witnesses, the relevant background facts can be summarized briefly. Banks operated three crack houses in Little Rock, Arkansas. The evidence at trial consisted primarily of testimony by individuals who had either purchased drugs from Banks or his associates, or who had assisted Banks in the operation of the crack houses. Many of the witnesses had initially been charged with drug-related offenses along with Banks, but later pled guilty. There was also evidence of numerous controlled buys undertaken by confidential government informants and directed by the Federal Bureau of Investigation. In addition to the evidence of Banks's drug activity, the government also presented evidence that Banks had threatened Detective Mark Stafford of the Little Rock Police Department, telling two Deputy United States Marshals to let Stafford know that Banks knew where Stafford lived and knew his wife's name.

II.

Banks raises four issues on appeal. He argues first that the district court erred in declining to take curative action in response to what he contends was a discovery violation committed by the government. Banks also contests the admission of a letter containing references to the "Crips" gang. Next, Banks argues that the district court should have compelled the presence of three defense witnesses. Finally, Banks contends that the district court should have made more explicit drug quantity findings during sentencing.

---

[1]The Honorable George Howard, Jr., late a United States District Judge for the Eastern District of Arkansas.

A. Alleged discovery violation

During trial the government introduced audio recordings of conversations between Banks and various confidential government informants. On the first day of trial, Banks objected to the admission of audio recordings featuring conversations between Banks and other individuals, contending that the government had not furnished the defense with a copy of the recordings. The prosecutor represented to the court that defense counsel had been provided with copies, whereupon the objection was overruled. The government introduced two additional recordings later that day over Banks's objection.

The next day, the prosecutor told the court, "Yesterday, basically every time an audio recording was played, Mr. Nichols objected on the basis that he had not received this material in discovery," adding, "I have for the court copies of letters that I sent to Mr. Nichols providing the audiotapes as well as the transcripts in response to his motion for discovery." Defense counsel responded, "Your Honor, I don't know what this piece of paper is, but I'll put my hand on the Bible and swear before anybody, I'll swear before the President of the United States that I did not receive any recorded conversations."[2] Counsel acknowledged, however, that he had previously received a transcript of the recordings. The prosecutor later remarked that defense counsel had also been given the opportunity to review materials in the government's possession a few days earlier, that counsel had declined to do so, and that none of the sixteen other defense attorneys who had prior involvement in the case indicated any difficulties in receiving the recordings. The district court overruled all of Banks's subsequent objections to the government's audio recordings.

_____

[2]Banks is represented by different counsel on appeal.

-3-

Banks contends that the government did not provide his counsel with a copy of these recordings, as required by Rule 16 of the Federal Rules of Criminal Procedure, and that the district court should have therefore excluded the recordings or taken some other curative action. Rule 16 requires the government to disclose to the defendant any written or recorded statements by the defendant. Fed. R. Crim. P. 16(a)(1)(B). "Discovery matters are committed to the discretion of the trial court, and an error in administering the discovery rules will produce a reversal only on a showing that the error was prejudicial to the substantial rights of the defendant." United States v. Woosley, 761 F.2d 445, 448 (8th Cir. 1985) (citing United States v. Roth, 736 F.2d 1222, 1228 (8th Cir. 1984)). Factual determinations are reviewed for plain error. United States v. Turning Bear, 357 F.3d 730, 733 (8th Cir. 2004).

Although Banks insists that the district court abused its discretion by failing to take any curative action in response to the government's purported discovery violation, he offers no support for this alleged discovery violation other than his assertion that counsel had never received the audio recordings. Banks, in other words, essentially asks us to revisit the representations made and the evidence offered to the district court and hold that a discovery violation occurred and that it called for curative action. Appellate courts, however, are not fact-finders, United States v. Searcy, 284 F.3d 938, 943 (8th Cir. 2002), and the administration of discovery rules and court procedures are left to the discretion of the trial court. Accordingly, we will not disturb the district court's ruling absent some cogent reason to conclude that the district court had abused its discretion or that its factual determinations were clearly erroneous. No such reason has been offered.

We observe, moreover, that Banks's counsel acknowledged that he had received the transcripts of the recordings. Banks was therefore on notice that corresponding recordings existed. Despite this fact, there is no indication that Banks did anything to obtain the recordings before trial other than to file what was essentially a boilerplate discovery motion and a similarly vague motion to continue based, *inter alia*, on

missing discovery. Neither of these filings sufficed to alert the government or the court that these recordings had not been received. Finally, we note that Banks's counsel had the opportunity to review materials a few days before trial, but did not do so.

B.     Admission of the letter referencing the "Crips"

Banks contends next that a letter containing two references to the "Crips" was improperly admitted. This claim lacks merit. In the letter, Banks asks a witness to his drug offenses to not testify against him and offers to take care of the witness and his father if the witness complies with this request. The letter twice uses the word "crip," the name of a widely recognized gang. The person who received this letter construed the letter as a threat.[3] While we recognize that evidence of gang membership carries "great potential for prejudice," United States v. Bradford, 246 F.3d 1107, 1117 (8th Cir. 2001) (per curiam), *overruled in part on other grounds by* United States v. Diaz, 296 F.3d 680, 684-85 (8th Cir. 2002) (en banc), the two gang references in the letter were fleeting, their import was somewhat vague, and they were neither adverted to again nor emphasized by the government. In these circumstances, the likelihood of undue prejudice was remote.[4]

---

[3]Although Banks principally objects to the appearance of the word "crip" in the letter, he also appears to suggest that the letter in its entirety was more prejudicial than probative because the letter was not written to the government official he was accused of threatening. Having reviewed the record, we cannot say that the admission of this letter constituted an abuse of discretion.

[4]In addition, although the government does not emphasize this point on appeal, the prosecutor at trial argued that the gang references were relevant because they constituted part of the threat, reminding the recipient of the letter that Banks was gang affiliated. We need not address this argument because the fleeting gang references were not likely to have had an appreciable prejudicial or probative effect.

C.    Banks's request for compulsory process

Banks argues that the district court should have compelled the appearance of three defense witnesses midway through trial.  The district court declined to order the appearance of these witnesses because securing their presence would have taken some time and would have therefore required the case to be continued.  Accordingly, our inquiry will focus on whether the district court properly refused to continue the case so that these witnesses could be made to appear.  "In determining whether to grant a continuance, the trial judge must balance the asserted need for the continuance against the hardship of the resulting delay, and should also consider the complexity of the case, the diligence of the party requesting a continuance, and the conduct of the opposing party."  United States v. Voss, 787 F.2d 393, 401 (8th Cir. 1986) (citations omitted).  Because it is more familiar with the parties and the circumstances of the case, the district court has broad discretion in deciding whether to grant a continuance, and its decision will be reviewed for an abuse of that discretion.  Id. at 401-02 (citations omitted).  The district court did not abuse its discretion here.

After the defense commenced its case and had called four witnesses, Banks advised the court that he wished to call some additional witnesses who were in custody, but who had not yet been brought to court by the United States Marshals Service.  These witnesses were Clyde Hatchett, Brandon White, and Frankie Webb.[5] Banks did not tender his list to the Marshals Service until the close of business on Friday (Banks commenced his case and spoke to the court about the absent witnesses on Monday morning) and, although the Marshals Service told Banks that it would need a writ or court order first thing Monday morning, Banks neglected to file the necessary motion with the court.

---

[5]Banks also sought the presence of another witness, who was eventually brought to court.

Banks appeared principally interested in securing Hatchett's presence. The district court attempted to accommodate Banks's request, despite the fact that "counsel failed to follow the rules." The district court asked the deputy marshal to "[e]ither step aside from [the Marshals Service's] rule" or solicit the assistance of the sheriff of the county in which Hatchett was incarcerated and offer to pay the sheriff for any expenses associated with bringing Hatchett to court. The deputy marshal explained that it was not feasible to bring any of the three witnesses sought by Banks to court that day, noting that Hatchett was incarcerated in Texas. The district court declined to grant a continuance so that these witnesses could be brought to court.

Banks does not appear to seriously dispute that he failed to adequately follow the procedures for procuring the presence of these witnesses. Nor did he explain to the trial judge why these witnesses were material to his case, a pertinent consideration when a district court is considering a delay that may inconvenience jurors, consume resources, and disrupt the court's calendar.[6] It also bears mention that Banks had already examined Hatchett (who had been a government witness). In light of the fact that Banks did not comply with the necessary procedures, did not act in a timely manner, and did not give the district court any reason to believe that the witnesses he sought were material to his defense, we conclude that the district court's decision to not continue the trial was well within its discretion.

D.    The district court's drug quantity findings

Banks's final argument is that the district court failed to make adequate factual findings in support of the drug quantity attributed to him for sentencing purposes. Rule 32 of the Federal Rules of Criminal Procedure requires the district court, "for any

---

[6]Banks suggests that it was the district court's responsibility to inquire *sua sponte* into the relevance and materiality of the witnesses' anticipated testimony. We disagree. Banks was the one who sought these witnesses, and it was his burden to persuade the district court that a continuance should have been granted.

disputed portion of the presentence report or other controverted matter — [to] rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). We consider Rule 32 satisfied if the district court "made clear at sentencing that it was relying on its impression of the testimony of the witnesses at trial, coupled with its specific rejection of the defendant's quantity objections." United States v. Flores, 73 F.3d 826, 835 (8th Cir. 1996) (citation omitted). Factual findings help ensure "meaningful appellate review and the fairness of the sentencing process." United States v. Scott, 91 F.3d 1058, 1062 (8th Cir. 1996) (quotation omitted).

At sentencing, the government summarized the testimony of various witnesses as it pertained to drug quantity, concluding that if the amounts to which the witnesses testified were added together, the total quantity would be about 2.8 kilograms of cocaine base – well above the 1.5 kilograms that the government sought to attribute to Banks. Because Banks had not seen the presentence report until the day of sentencing and because his counsel had neglected to file written objections (although the district court had granted him extra time to do so), the district court continued the sentencing hearing, stating, "I recognize that public funds are being misused, but I have an affirmative duty to make sure that the defendant receives due process." A second hearing was held twenty days later.

Banks filed written objections, in which he stated that relying upon "testimony solicited from government witnesses at trial" would be unconstitutional, and requesting that he be attributed only the amount of cocaine base reflected by the jury's verdict or the "actual amount he possessed." At the second sentencing hearing, he also argued that the government's witnesses were unreliable and that he had been denied due process. In response, the government noted that the witnesses had testified under oath and had been subjected to cross-examination, and reiterated that the trial testimony sufficed to establish that the drug quantity was "easily over one and a half

kilos of crack cocaine." After affording Banks an opportunity to comment on the government's remarks, the trial judge stated that he had heard enough and overruled Banks's objections.

Although the district court could have been more explicit, there can be little question, in light of the context, that the district court's drug quantity determination was based on the testimony at trial. Cf. United States v. Davis, 471 F.3d 938, 950-51 (8th Cir. 2006) (noting in the Rule 32 context that the district court's remarks at sentencing should be read in context). Moreover, given the circumstances, we cannot find fault with the district court's summary rejection of Banks's drug quantity objections. In sum, the record is sufficient to allow "meaningful appellate review," and we can discern no unfairness springing from the absence of more explicit factual findings. Remanding this case for further sentencing proceedings would serve no useful purpose.

The judgment is affirmed.

_____