# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3827

_____

United States of America,             *
                                      *
            Appellee,                 *
                                      *    Appeal from the United States
      v.                              *    District Court for the
                                      *    Southern District of Iowa.
Juan Marquez-Alvarado,                *
                                      *
            Appellant.                *

_____

Submitted: May 15, 2007
Filed: September 6, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Juan Marquez-Alvarado appeals from his conviction for, *inter alia*, conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(b)(1)(B). We affirm.

**I.**

Prior to the start of the charged conspiracy, Marquez-Alvarado, a friend of a drug dealer named Callacho, was present when Callacho sold cocaine and marijuana to Derek Thompson on three occasions in late 1998 or early 1999. Although Marquez-Alvarado did not take money or directly deal drugs in those instances, he intervened by speaking with Callacho in Spanish as Thompson haggled with Callacho

over the price of marijuana. Thereafter, Callacho acceded to Thompson's price demands.[1] After the arrest of certain members of Callacho's operation, Coplin Dunn began dealing marijuana and cocaine to Thompson instead. In 2000 or 2001, Marquez-Alvarado was also present at approximately three transactions between Thompson and Dunn.

The charged conspiracy extended from the summer of 2001 to April 19, 2004, during which time Marquez-Alvarado operated as a supplier of marijuana to a number of co-conspirators who distributed it. He was responsible for the introduction of large quantities of marijuana into Iowa hidden in cement statues and furniture, which he had delivered to the home of Long Ly (Long), Bao Ly (Bao), or other conspiracy members with whom he dealt. Long, Bao, Theodore Tuon, and Tommy Le would then break open the delivered containers with a sledgehammer and distribute amongst themselves the marijuana that they needed, with Marquez-Alvarado retaining any undistributed marijuana. Once they sold their respective shares, Long would frequently collect the pooled proceeds and pay Marquez-Alvarado in one lump sum. Marquez-Alvarado dealt more than 2000 pounds of marijuana in this fashion over the course of the conspiracy. Each of the members testified to their involvement in, and understanding of, the arrangement. Additionally, Tuon was captured on videotape selling marijuana obtained from Marquez-Alvarado to undercover officers, and both Tuon's girlfriend and Marquez-Alvarado's wife provided testimony corroborating details expressed by co-conspirators.

Marquez-Alvarado was charged with, among other things, conspiring to distribute marijuana. Over Marquez-Alvarado's objection, the jury heard testimony concerning Marquez-Alvarado's presence at Thompson's cocaine and marijuana drug purchases prior to the commencement of the charged drug conspiracy as well as

---

[1]Although Thompson observed the conversations, he does not speak Spanish and could not understand what was said.

testimony concerning Marquez-Alvarado's trips to Kansas City to purchase cocaine. The jury found Marquez-Alvarado guilty, and the district court[2] imposed a sentencing enhancement for Marquez-Alvarado's role as a leader or organizer of the conspiracy pursuant to the United States Sentencing Guidelines Manual (U.S.S.G.) § 3B1.1(a).

## II.

Marquez-Alvarado contends that the district court erred by allowing the jury to hear testimony regarding unrelated and prejudicial cocaine transactions that took place prior to and during the charged marijuana conspiracy. He also contends that he should not have received a sentencing role enhancement.

## A.

We review for abuse of discretion rulings pertaining to the admission of evidence over a party's objection. United States v. Abdul-Aziz, 486 F.3d 471, 475 (8th Cir. 2007) (citation omitted). Federal Rule of Evidence 404(b) prohibits the introduction of evidence of a defendant's prior bad acts for use as character or propensity evidence, but permits the admission of such evidence for other purposes related to the charged crime, such as for "proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident . . . ." To be admissible under this rule, the evidence must "(1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value." United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006) (citation omitted). We will reverse a decision to admit evidence under Rule 404(b)

---

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

only where evidence of wrongdoing "'clearly had no bearing on the case and was introduced solely to prove the defendant's propensity' to engage in criminal misconduct." Id. (quoting United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998)).

The evidence pertaining to Marquez-Alvarado's involvement in Thompson's cocaine and marijuana deals prior to the charged conspiracy and the evidence concerning the trips to Kansas City with Tuon and Long to purchase cocaine during the conspiracy is relevant because it assisted in demonstrating that Marquez-Alvarado had the necessary knowledge and intent to pursue the marijuana conspiracy. Marquez-Alvarado's presence at some of Thompson's deals with Callacho and Dunn suggests that Marquez-Alvarado may have been laying the groundwork for the future conspiracy. Because the packaging of the marijuana that Thompson purchased from Callacho and Dunn shared unique characteristics that were also present in the packaging of the marijuana that Marquez-Alvarado supplied to the conspiracy, a jury could find that Marquez-Alvarado supplied marijuana between 1998 and 2001 and therefore had the expertise, knowledge, and resources to supply the conspiracy with marijuana from 2001 onwards.[3] Furthermore, his trips with Tuon and Long to Kansas City, in addition to demonstrating that Marquez-Alvarado knew and had relationships with out-of-state drug dealers, also demonstrated the nature of the drug-related business relationship between Marquez-Alvarado and his two traveling companions.[4] The trips additionally provided evidence demonstrating Marquez-Alvarado's familiarity with techniques relating to the clandestine transportation of drug-related

_____

[3]The marijuana was consistently surrounded by brown tape in peculiarly thin, flat packages.

[4]In return for their accompanying Marquez-Alvarado on each respective trip, Marquez-Alvarado offered Tuon money and Long a discounted price on the cocaine purchased in Kansas City.

contraband between states.[5]  This is of particular relevance to the marijuana conspiracy because Marquez-Alvarado was responsible for coordinating the movement of marijuana into Iowa.  These events all occurred either during, or within a reasonable temporal proximity of, the charged conspiracy.  See United States v. Love, 419 F.3d 825, 828 (8th Cir. 2005) ("Proximity in time is one factor in determining the relevance of a prior drug conviction, but the standard is reasonableness, not an absolute number of years.").  That they involved a different drug – cocaine – is not determinative; as the transactions with Thompson demonstrate, cocaine and marijuana were frequently dealt concurrently to the same individuals.  See Llach v. United States, 739 F.2d 1322, 1327 (8th Cir. 1984) (permitting evidence of methamphetamine and marijuana transactions even though defendant was charged with cocaine distribution because the individuals involved in the cocaine transactions also dealt in the other drugs); cf. United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006) (holding that the evidence of a prior drug offense involving marijuana was erroneously admitted in a cocaine distribution case because, in relevant part, the prior offense of possession was functionally dissimilar to the charged offense of distribution).  The direct testimony about Marquez-Alvarado's involvement in the prior acts sufficed to support a jury finding concerning them.  Llach, 739 F.2d at 1327.  Finally, Marquez-Alvarado has not demonstrated that the prejudicial impact of the challenged evidence outweighed its probative value.  We conclude, therefore, that the district court did not abuse its discretion by admitting the challenged evidence.

B.

We review for clear error the district court's findings regarding a role enhancement under the sentencing guidelines.  See United States v. White, 241 F.3d 1015, 1024 (8th Cir. 2001).  The sentencing guidelines provide for an upward

---

[5]Tuon testified that Marquez-Alvarado concealed the cocaine in the bumper of their vehicle.

adjustment of four levels if the defendant was an organizer or leader of a criminal activity that involved five or more participants. U.S.S.G. § 3B1.1(a) (2002). Marquez-Alvarado does not contest the involvement of five or more individuals. Instead, he contends that his own involvement was that of a supplier who distributed marijuana at arms' length and who did not organize, lead, or otherwise direct the conspiracy. We do not agree.

When determining whether a defendant is an organizer or leader, the court should consider factors including

> the defendant's exercise of decision making authority, the nature of the defendant's participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree to which the defendant participated in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority the defendant exercised over others.

United States v. Mickle, 464 F.3d 804, 807 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1308 (2007) (citations omitted).

Although it is true that "one's status as a distributor of narcotics would not, standing alone, transform one into a manager or supervisor," United States v. Plancarte-Vazquez, 450 F.3d 848, 853 (8th Cir. 2006), there is sufficient evidence to support the district court's determination that Marquez-Alvarado's influence extended beyond that of a distributor. Marquez-Alvarado determined the timing and size of the marijuana shipments and allowed a cyclical arrangement whereby those who received his marijuana had time to sell their respective shares before paying him and repeating the delivery process. Perhaps most significantly, Marquez-Alvarado did not simply sell marijuana to the co-conspirators in marketable form, but instead made them responsible for extracting it from the furniture and statues that he had used to smuggle the drug into Iowa. Finally, the evidence suggests that Marquez-Alvarado exerted

direct control over an individual named Carlos, who delivered the furniture and statues at the behest of Marquez-Alvarado, sometimes collected payments for Marquez-Alvarado, occasionally assisted in breaking down the furniture or statues, and carted off the remnants of the broken containers once the marijuana had been removed. Given these circumstances, the district court did not err in imposing the role enhancement.

The judgment is affirmed.

_____