# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2641
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Brian Johnson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 12, 2008
Filed: July 30, 2008
_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Brian Johnson was convicted of one count of conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II) and 846; two counts of distributing a substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); one count of possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii)(II); and one count of possessing a firearm with a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Johnson appeals his convictions,

arguing that the district court[1] erred by admitting irrelevant, prejudicial, and hearsay evidence against him and by continuing his trial. We affirm.

## I. Background

On three occasions in February 2006, a surveillance officer covering the scene of controlled cocaine buys at Tyrone Scott's residence in Grandview, Missouri, saw a gray Ford Taurus arrive at the residence while the buys were in progress. On the second occasion, the officer followed the Taurus to a residence in Kansas City. On the third occasion, the officer followed the Taurus as it was leaving Scott's residence. Another officer in a marked police vehicle took over the pursuit and unsuccessfully attempted to pull the Taurus over. The pursuit ended when the Taurus struck another vehicle and came to a stop in the front yard of a residence. Johnson exited the Taurus and ran, but was caught and arrested. A search of Johnson's person yielded $580 of the marked money from the controlled buy, an additional $4,581, and two small bags of crack cocaine.

Johnson's girlfriend, Kisha Barnes, who leased the Kansas City residence, called police to pick up the Taurus. She told the officer that she had been dating Johnson for the previous two months and that he had lived with her during that time. A warrant-authorized search of the Kansas City residence yielded a Raven Arms .25 caliber semi-automatic handgun, three letters from Scott to Johnson, a digital gram scale, and 640.4 grams of cocaine.

The day after Johnson's arrest, the owner of the residence where the pursuit of Johnson had ended called police to report a Glock .45 caliber handgun, holster, and magazine in his yard.

_____

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

Johnson, Scott, Barnes, and two other individuals were charged in the conspiracy to distribute cocaine.

## II. Analysis

A.    Evidentiary Issues

We review a district court's decision to admit evidence over objection for abuse of discretion. United States v. Marquez-Alvarado, 501 F.3d 971, 974 (8th Cir. 2007).

1.    Flight Evidence

Johnson argues that the district court erred by admitting testimony and video evidence that the Taurus he was driving struck another vehicle during his flight from police and that the driver of the other vehicle was injured. Specifically, Johnson argues that the evidence was irrelevant or minimally probative and highly prejudicial and thus should have been excluded under Federal Rules of Evidence 402 or 403.

We have held that evidence of flight has probative value as an "admission by conduct" of guilt or consciousness of guilt. United States v. Hankins, 931 F.2d 1256, 1261 (8th Cir. 1991) (internal quotation omitted). Because such evidence might be "only marginally probative as to the ultimate issue," however, district courts must assess the possible probative value in each case, scrutinizing the facts and inquiring as to

> the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

Id. (quoting United States v. Peltier, 585 F.2d 314, 323 (8th Cir. 1978)).

-3-

The facts in this case support all of the necessary inferences. Johnson was leaving the scene of a controlled drug buy when he was pursued. He did not pull over when the marked police vehicle activated its siren behind him, stopping only when he struck another vehicle. He then exited the vehicle and fled on foot. When apprehended, he was found to be in possession of cocaine and marked bills from the controlled buy. We conclude, in sum, that "there is a sufficient basis in the evidence to warrant the inference that the flight 'was prompted by considerations related to the issue in question.'" United States v. Roy, 843 F.2d 305, 310 (8th Cir. 1988) (quoting Peltier, 585 F.2d at 323)). We agree with the district court that "the accident supports the theory that this was a rather dramatic effort at flight." Tr. at 96.

The particular facts of Johnson's flight, including his collision with another vehicle, also provided information necessary for the narrative of the government's case. It provided the jury with a factual context for Johnson's investigation and arrest, such as how the police discovered the identity of the Taurus's driver, how he was apprehended, and how the evidence from the third controlled buy was found on him. See United States v. Lupino, 301 F.3d 642, 645-46 (8th Cir. 2002) (citing United States v. Harris, 956 F.2d 177, 179 (8th Cir. 1992) ("[A]lthough references to other crimes generally are inadmissible, the prosecution is entitled to explain the circumstances surrounding the investigation and arrest of a defendant.")).

Because evidence of flight carries a risk of prejudice, however, especially when it involves other harmful acts, "district courts should be wary of the amount of evidence permitted on this subject and the way in which it is presented." Hankins, 931 F.2d at 1262 (citing Peltier, 585 F.2d at 324); see also Lupino, 301 F.3d at 646 (although conversation between officer and hiding suspect was relevant to show flight and context of investigation and arrest, testimony that the conversation concerned the sale of drugs was unfairly prejudicial). Johnson argues that, even if relevant, the evidence of the pursuit and car collision was unfairly prejudicial because the government intended it to portray Johnson as a dangerous individual with no regard

for the safety of others.[2]  As noted above, however, the evidence of the collision was highly probative of the intensity of Johnson's flight attempt and explained how he was stopped and arrested for the cocaine charges.  Accordingly, because any unfair prejudice resulting from the presentation of the flight and collision evidence to the jury did not substantially outweigh its probative value, the district court did not abuse its discretion in admitting it.

### 2.    Gun Evidence

Johnson also argues that the district court erred by admitting evidence of the above-described Glock .45 caliber handgun and holster.  Specifically, Johnson argues that because he was not charged with possession of the Glock, but of the Raven Arms handgun later found at Barnes's residence, the evidence regarding the Glock was irrelevant or minimally probative and highly prejudicial and thus inadmissible.

The district court ruled that it would admit evidence of the Glock because "the possession of a weapon would have the traditional purpose of showing intent, and intent to protect drugs . . . ."  Tr. at 4.  The court later stated that the Glock evidence was "admissible, the same way as other drug deals would be admissible to show intent to possess."  Id. at 94.  From these statements, we infer that the district court considered the Glock evidence to be probative of Johnson's intent to possess the Raven Arms handgun.  See Fed. R. Evid. 404(b) (evidence of other wrongful acts is admissible to prove, *inter alia*, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").  To be admissible, wrongful-act evidence that is extrinsic to the crimes charged must "(1) be relevant to a material issue raised at trial; (2) be similar in kind and close in time to the crime charged, (3)

---

[2] In her closing statement, counsel for the government remarked, "You saw it on that tape.  That man began a high-speed chase that finally ended in an accident.  He drove through the streets of Kansas City, community streets, high population streets, endangering anybody around there."  Tr. at 592.

be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value." United States v. Marquez-Alvarado, 501 F.3d 971, 974 (8th Cir. 2007).

As the district court observed, the Glock evidence was also potentially probative of Johnson's intent to possess and distribute cocaine and thus intrinsic to the government's prosecution for those crimes. See United States v. Burns, 432 F.3d 856, 864 (8th Cir. 2005) ("Firearms, which are often used to safeguard and facilitate drug transactions, are probative of an ongoing drug conspiracy . . . ." (internal quotation omitted)); United States v. Swinton, 75 F.3d 374, 378 (8th Cir. 1996) ("[W]here evidence of other crimes is so blended or connected, with the ones on trial as that proof of one incidentally involves the others; or explains the circumstances; or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged." (internal quotations and alterations omitted)).

We conclude that the Glock evidence was relevant to Johnson's knowing possession of the Raven Arms handgun, which was at issue during the trial. See United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) (evidence that a defendant possessed a firearm is relevant to show knowledge and intent to possess a different firearm). The record contained sufficient evidence from which the jury could find that Johnson possessed the Glock, especially with Barnes's testimony identifying the Glock and the holster as Johnson's. Johnson's similar-in-kind and close-in-time possession of the Glock rendered it probative of his possession of the other weapon. It also carried with it the risk of unfair prejudice. See United States v. Gilmore, 730 F.2d 550, 555 (8th Cir. 1984) (evidence of similar acts is highly probative of knowledge and intent, but is also "undoubtedly prejudicial").

When the evidence in question is relevant, we defer to the district court's judgment with respect to balancing its probative value with its risk of unfair prejudice.

United States v. Peoples, 250 F.3d 630, 639 (8th Cir. 2001). We conclude that the district court did not abuse its discretion in concluding that the risk of unfair prejudice did not substantially outweigh the probative value of that evidence.

### 3. Bell Ruling

Johnson argues that the district court erred by conditionally admitting the out-of-court statements of his co-defendants through the testimony of the controlled-buy informant without later making explicit findings that a conspiracy existed, that Johnson and the co-defendants in question were members of the conspiracy, and that the statements were made in furtherance of the conspiracy, as required by United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978).

A district court is not required to make a separate, explicit Bell ruling if it substantially complies with Bell's procedures. See, e.g., United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997); United States v. Roulette, 75 F.3d 418, 424-25 (8th Cir. 1996); United States v. Ortiz-Martinez, 1 F.3d 662, 673 (8th Cir. 1993). The record indicates that Johnson failed to specifically request a Bell ruling, but made a motion for acquittal challenging the sufficiency of the evidence that the district court denied. We thus conclude that the district court substantially complied with Bell. See McCracken, 110 F.3d at 542 ("If the record indicates that a defendant failed to specifically request a Bell ruling, but made a motion for acquittal, we will consider the district judge's denial of the acquittal motion as substantial compliance with the Bell holdings and employ a plain-error standard of review.") (citing Ortiz-Martinez, 1 F.3d at 673). Johnson does not challenge on appeal that the evidence was insufficient for the district court to make an affirmative Bell ruling. Moreover, Johnson was not prejudiced by the district court's failure to make explicit Bell findings because the record reveals overwhelming evidence of a conspiracy and that all of the statements were made by co-conspirators in furtherance of the conspiracy. See United States v. Engler, 521 F.3d 965, 973 (8th Cir. 2008) (citing United States v. Anderson, 243 F.3d 478, 483 (8th Cir. 2001)).

4.      Hearsay Statement

Johnson argues that the district court erred by admitting a statement of the controlled-buy informant through the testimony of the agent in charge of the investigation. The agent testified that the informant had called him during the third transaction and said that the same cocaine supplier from the first two transactions had recently received a large shipment of cocaine and was on his way to Scott's residence.

We conclude that any error in admitting the informant's statement through the agent's testimony was harmless. "[T]he primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." United States v. Azure, 845 F.2d 1503, 1507 (8th Cir. 1988) (internal quotation and alteration omitted). Thus, "where the declarant is also a witness, the rationale of the hearsay rule does not apply." Id. (internal quotation and alteration omitted). Accordingly, we have held that the admission of inadmissible hearsay was harmless where the declarant testified and was available for cross-examination, the declarant's testimony corroborated the out-of-court statement, the district court issued a limiting instruction, and the evidence against the defendant was strong. Id. The informant testified and was subject to cross-examination by the defendant. The informant's statement to the agent was corroborated by his own testimony that during the third transaction, Scott told him that the same cocaine supplier from the first two transactions had recently received a large shipment of cocaine and was on his way to Scott's residence.[3] Tr. at 65. The informant also testified that following the third transaction he reiterated to the agent that the supplier was the same person from the previous two transactions. Id. at 72. The district court cautioned the jury against considering the informant's out-of-court statement for its truth, tr. at 216, and the evidence against Johnson on this issue was strong. Accordingly, we conclude that the admission of the informant's

_____

[3] Scott's statement through the informant's testimony was admitted over a hearsay objection as a co-conspirator's statement.

statement via the agent's testimony did not affect Johnson's substantial rights. See Fed. R. Evid. 103(a).

B.    Continuance

Johnson also contends that the district court erred by granting the government a one-week continuance to enable it to procure Barnes as a witness. The trial was scheduled to begin on Monday morning, November 6, 2006. At the outset of the proceedings that morning, the government explained that Barnes, a co-defendant in the case, had called counsel for the government "out of the blue" the previous Friday afternoon, had turned herself in the next afternoon in St. Louis, and had indicated that she was willing to testify against Johnson. It pointed out the obvious importance of Barnes's testimony for its case.

A "district court has broad discretion in deciding whether to grant a continuance," and we review that decision for abuse of discretion. United States v. Banks, 494 F.3d 681, 686 (8th Cir. 2007). In determining whether to grant a continuance, a district court must "balance the asserted need for the continuance against the hardship of the resulting delay, and should also consider the complexity of the case, the diligence of the party requesting a continuance, and the conduct of the opposing party." Id. The record reveals that the district court carefully weighed these factors in arriving at its decision to grant the continuance. The district court noted that the government's case was more complex than Johnson's "fairly straightforward" defense and that the burden of a delay would fall more heavily on the government than on Johnson. The district court took care to minimize any unfair prejudice to Johnson, indicating that he would be given time to interview Barnes. Given these circumstances, the district court did not abuse its discretion in granting the continuance.

The judgment is affirmed.

_____