# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2262

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Dwayne Antonio Fuller, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 11, 2008
Filed: March 4, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Dwayne Antonio Fuller was convicted of conspiring to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] imposed the statutory minimum of 120 months' imprisonment, and Fuller appeals. We affirm.

I.

We present the facts in the light most favorable to the jury's verdict. United States v. Johnson, 450 F.3d 366, 369 (8th Cir. 2006). Beginning sometime around

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

August 2005, Fuller was a mid-level dealer in a Des Moines, Iowa, drug ring. Fuller regularly obtained crack and powder cocaine from the local kingpin, Cisco Burton, and redistributed the drugs to street-level dealers, including Joey Rollen. Between August and October 2005, Rollen purchased crack from Fuller at least every other day.

On October 12, 2005, undercover agent Ken Arduser contacted Rollen, seeking to buy an ounce of crack. Rollen set up a rendezvous to consummate the transaction. As Agent Arduser waited at the specified location, he observed an automobile being driven by an unidentified black male arrive at the scene. Rollen entered the car and emerged several minutes later with an ounce of crack, which he sold to Arduser for $1,200. Arduser recorded the automobile's plate number and later determined that Fuller was the registered owner.

Fuller was indicted on charges of distribution and conspiracy to distribute crack and powder cocaine. In addition to Agent Arduser's account, the government presented the testimony of Rollen and three other drug dealers who were part of the alleged conspiracy, all of whom testified in conjunction with plea agreements.

Each co-conspirator described Fuller as a middleman and underling of Burton. Rollen testified that he began buying drugs from Fuller after Derek Thompson was arrested in August 2005. Other testimony suggested that Thompson had served as Burton's middleman and that Fuller had either replaced Thompson or helped to fill the void left by his arrest.

Over defense counsel's objection, Ronnie Cyrus testified that "Cisco [Burton] had told my brother and [Fuller] and Twan to cut me off and stay away from me because [the] DEA was watching me and it might lead to them arresting them." The district court concluded that the statement was admissible under the co-conspirator exception to the hearsay rule.

Fuller testified in his defense, stating that he had never been involved in illegal drug dealing. The district court ruled that the government could not introduce evidence of drug activities unrelated to cocaine. To impeach Fuller, however, the government played portions of taped conversations between Fuller and Thompson, in which they discussed "skittles," "dollars," "sevens," and "zippos." The government did not tell the jury what Fuller and Thompson were discussing, and the taped conversations were not admitted into evidence.

The district court denied Fuller's motion for judgment of acquittal, and the jury returned a split verdict, finding Fuller guilty on the conspiracy charge and not guilty on the distribution charge.

Prior to his sentencing, Fuller filed a motion for a new trial on the basis of newly discovered evidence. He claimed to have just discovered statements from Thompson's interrogation that established that Thompson did not know Fuller to be involved with cocaine and which verified that the substance of the taped conversations was actually user quantities of marijuana. Fuller also claimed to have discovered evidence that Burton had been released after an arrest by the Des Moines police. Fuller argued that this proved that Burton was not a fugitive and therefore not a drug kingpin, as the testimony had suggested. In denying the motion, the district court concluded that this evidence was not new or material.

II.

Fuller's initial argument is that the district court erred when it denied his motion for judgment of acquittal. "We review the district court's denial of the motion for judgment of acquittal using the same standard as the district court." United States v. Monnier, 412 F.3d 859, 861 (8th Cir. 2005). "[W]e view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences," and we will reverse only if no reasonable jury could find the defendant guilty beyond a

reasonable doubt. Id. (quoting United States v. Exson, 328 F.3d 456, 460 (8th Cir. 2003)).

The crux of Fuller's argument is that the evidence was insufficient because the government's case consisted solely of testimony from four co-conspirators. Although he acknowledges the rigorous standard by which we evaluate challenges to witness credibility, Fuller contends that reversal is warranted because no corroborating evidence supported the accomplice testimony. Accomplice testimony, however, need not be corroborated to support a conviction. See United States v. Coplen, 533 F.3d 929, 931 (8th Cir. 2008). In this case, the jury was fully apprised of the witnesses' backgrounds and potential motives, and it was the jury's prerogative to decide whether to credit the testimony. See id. (noting that unless the testimony is incredible on its face, questions of credibility are for the jury).

All four co-conspirators made similar statements about Fuller's role in the organization, and Fuller does not argue that the testimony was inconsistent or otherwise implausible. The witnesses all knew Fuller's street nicknames, and cell phone records confirmed that they had been in contact with Fuller. All four testified to seeing Fuller dealing cocaine. Furthermore, Agent Arduser testified that he saw Rollen enter Fuller's vehicle on October 12, 2005, and emerge with an ounce of crack.[2] In light of this evidence, a rational jury could have found Fuller guilty of conspiring to distribute cocaine. Accordingly, the district court did not err in denying the motion for judgment of acquittal.

---

[2]Because the jury acquitted him on the distribution charge (which was based on the October 12 incident), Fuller argues that the jury necessarily discredited testimony about the October 12 transaction. It seems more likely, however, that the jury based its acquittal on Arduser's inability to positively identify the individual driving Fuller's vehicle. In any event, a reasonable jury could have concluded that Arduser's testimony—though insufficient to support a conviction—corroborated other testimony that Fuller was involved in a conspiracy to distribute cocaine.

-4-

III.

Fuller argues that the district court erred in denying his motion for a new trial based on the claim of newly discovered evidence. We review a district court's denial of a motion for a new trial under an abuse of discretion standard. Johnson, 450 F.3d at 372. Such motions should be granted only if the following elements are met:

> (1) the evidence must have been discovered after the trial; (2) the failure to discover must not be attributable to a lack of due diligence on the part of the movant; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be likely to produce an acquittal if a new trial is granted.

Id. (quoting United States v. Dittrich, 204 F.3d 819, 821 (8th Cir. 2000)).

According to Fuller, two post-trial developments supported his motion. First, Fuller claimed to have just learned about potentially exonerating statements Thompson made to the government; second, Fuller claimed that there was new evidence demonstrating that Burton was not a fugitive. The district court found that Fuller had not sufficiently established that this evidence was unavailable, and it concluded that the evidence was immaterial to the outcome of the trial. Because we agree that the evidence was not material, it is unnecessary to examine the issues of availability and diligence.

The new evidence from Thompson consisted of statements that he did not know Fuller to be involved with cocaine and that the taped conversations with Fuller pertained only to user quantities of marijuana. Fuller argues that these statements would have exonerated him and explained the incriminating phone conversations. We disagree. At best, Thompson's statement about Fuller's involvement would have established only that Thompson lacked knowledge. The statement would not have undermined the testimony of the government's witnesses. This is particularly true

because much of the evidence—including the testimony from Rollen and Agent Arduser—concerned activity that occurred after Thompson was arrested.

Thompson's explanation that the phone conversations involved marijuana is also immaterial, because the government did not claim that the discussions concerned cocaine. Rather, the conversations were introduced to impeach Fuller's testimony after he asserted that he had never dealt illegal drugs. The tapes, which were not admitted into evidence, allowed the jury to juxtapose Fuller's testimony with his clandestine discussion of "skittles," "dollars," "sevens," and "zippos." Testimony from Thompson that the conversations were about marijuana would have had little impact on the impeachment value of the recordings.

Evidence of Burton's release from custody is similarly immaterial. As an initial matter, Fuller fails to explain how evidence of Burton's post-arrest release would be dispositive on the issue of Burton's prior criminal conduct. Given the broad discretion afforded to state and federal prosecutors, there could be a variety of explanations for such a release. Assuming, however, that Fuller could show that Burton was not wanted for drug trafficking, that evidence would be unlikely to affect the outcome of the trial. Four witnesses testified that they knew of Fuller's involvement in the drug ring, and Agent Arduser's testimony provided circumstantial evidence that supported that testimony. The testimony about Burton, on the other hand, supplied background information; he was by no means the sine qua non of the government's case. That the witnesses may have been mistaken about Burton's fugitive status does not counterbalance the weight of the evidence against Fuller. Accordingly, the district court did not abuse its discretion in denying Fuller's motion for a new trial.[3]

---

[3]Along with his motion for a new trial, Fuller raised a <u>Brady</u> claim, arguing that the government should have disclosed the evidence. Our disposition of Fuller's motion for a new trial informs our analysis of his <u>Brady</u> claim. <u>United States v. Dittrich</u>, 204 F.3d 819, 822 (8th Cir. 2000). Because we have determined that the

IV.

Fuller also contends that the district court improperly admitted hearsay evidence when it allowed Ronnie Cyrus to testify about Burton's fear of a DEA investigation. We review the district court's admission of evidence over objection for abuse of discretion. United States v. Johnson, 535 F.3d 892, 895 (8th Cir. 2008). Under the procedure laid out in United States v. Bell, 573 F.2d 1040 (8th Cir. 1978), a district court may admit an out-of-court statement from a co-conspirator if it determines, by a preponderance of the evidence, that "the statement was made during the course and in furtherance of a conspiracy to which the declarant and the defendant were parties." United States v. Engler, 521 F.3d 965, 972 (8th Cir. 2008) (quoting United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997)); see also Fed. R. Evid. 801(d)(2)(E). Fuller contends that the district court erred by (1) finding that there was sufficient evidence of a conspiracy; (2) failing to explicitly state what evidence established the conspiracy; (3) explicitly instructing the jury, after finding sufficient evidence of a conspiracy, that it could consider the evidence; and (4) not excluding the statement as double hearsay.

We have already explained that the evidence was sufficient for a jury to find Fuller guilty of conspiracy beyond a reasonable doubt. It was thus also adequate to support the district court's finding, by a preponderance of evidence, the existence of a conspiracy; and it is clear that the statement was made in furtherance of that conspiracy. Fuller's second contention of error is also without merit, because we have held that a district court need not make an explicit Bell ruling if, as here, it substantially complies with Bell's procedures. Johnson, 535 F.3d at 897.

The third argument Fuller raises involves a misapprehension of Bell's requirements. In explaining the procedure for admitting a statement under Rule

evidence is immaterial, we also conclude that it is insufficient to support a new trial based on a Brady violation. See id.

801(d)(2)(E), <u>Bell</u> states that "[t]he court should not charge the jury on the admissibility of the coconspirator's statement, but should, of course, instruct that the government is required to prove the ultimate guilt of the defendant beyond a reasonable doubt." 573 F.2d at 1044. Taken in context, this language means that the trial judge should be the gatekeeper, determining the initial question of admissibility rather than leaving it to an instructed jury. <u>Bell</u> does not, as Fuller argues, prohibit the district court from telling the jury when evidence may be properly considered.

We also reject the argument that the district court should have excluded the statement as double hearsay. Fuller did not raise this objection at trial, and it is not entirely clear from the record whether Cyrus heard the statement himself or from someone else. Given the brevity and limited import of the out-of-court statement, as well as the substantial independent evidence of a conspiracy, we conclude that any mistake in admitting the statement would at worst have constituted only harmless error. See <u>United States v. Whitehead</u>, 238 F.3d 949, 952 (8th Cir. 2001).

V.

Fuller next argues that the district court erred in not giving the jury a cautionary accomplice instruction. Because Fuller did not raise this objection at trial, we review for plain error. <u>United States v. Anderson</u>, 654 F.2d 1264, 1268 (8th Cir. 1981).

As Fuller concedes, the accomplice instruction is not mandatory, even when there is no corroboration for a co-conspirator's testimony. <u>United States v. Schoenfeld</u>, 867 F.2d 1059, 1061-62 (8th Cir. 1989). As we have observed, there was at least some corroborating evidence in this case. Furthermore, the substance of the accomplice instruction was subsumed in other instructions—in particular the instruction that cautioned the jury about the potential motives of individuals testifying under plea agreements. Accordingly, the district court's failure to give the instruction *sua sponte* did not constitute plain error.

## VI.

Finally, Fuller contends that a new trial is warranted because of prosecutorial misconduct in admitting evidence of prior bad acts. Again, no objection was made at trial, so we review only for plain error. "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." United States v. Robinson, 439 F.3d 777, 780 (8th Cir. 2006) (quoting United States v. Ehrmann, 421 F.3d 774, 783 (8th Cir. 2005)).

After a thorough review of the record, we conclude that Fuller was not unfairly prejudiced. The first two examples Fuller cites involve brief statements that were inadvertently elicited from government witnesses—once by the prosecution and once by Fuller's counsel on cross-examination. The statements consisted of fleeting references to Fuller's distribution of either the drug ecstasy or marijuana, and they did not significantly interfere with Fuller's ability to obtain a fair trial.

The third example cited by Fuller was the government's use of the recorded conversations, apparently concerning marijuana, to impeach his testimony. As previously discussed, the district court allowed the government to play the tapes only after Fuller testified that he had never been involved in illegal drug trade. Fuller's testimony therefore opened the door for the prosecution to use that evidence. See United States v. Beason, 220 F.3d 964, 968 (8th Cir. 2000) ("We have allowed the use of otherwise inadmissible evidence to clarify or rebut an issue opened up by defense counsel on cross-examination."). Accordingly, Fuller was not unfairly prejudiced by the government's use of the taped conversations.

The judgment is affirmed.

_____