# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2687

———————

United States of America,

    Plaintiff-Appellee,

v.

Theodore Stevie Varner,

    Defendant-Appellant.

Appeal from the United States
District Court for the
District of Minnesota.

———————

Submitted: March 16, 2012
Filed: May 18, 2012

———————

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

———————

BRIGHT, Circuit Judge.

A jury in the district of Minnesota convicted Theodore Varner of being a felon in possession of a firearm. The district court[1] sentenced him to 235 months (19 years and 7 months) in prison. On appeal, Varner argues (1) the evidence was insufficient to support the verdict, (2) the district court abused its discretion in admitting evidence of a crack pipe, and (3) the district court abused its discretion at sentencing by declining to depart or vary downward on account of his physical condition. We affirm.

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

# I. Background

On the morning of September 22, 2010, Officers Douglas Whittaker and Benjamin Lego of the Saint Paul police department responded to a 911 weapons call. The 911 caller described the suspect as a black male with braids, wearing blue jeans and a dark hooded sweatshirt. When the officers arrived at the apartment building, Officer Lego saw a green Ford Explorer leaving the parking lot with the passenger in the vehicle matching the description provided by the 911 caller. Officer Lego ordered the driver to stop three times, but the driver did not comply and left the parking lot. Officer Lego radioed a request for assistance in stopping the vehicle, providing the description of the Explorer and its direction of travel. Officer Lego and Officer Whittaker then got back in their squad car to follow the vehicle. Another officer drove up to the apartment building as the Explorer was leaving and pursued the vehicle, but by the time he caught up, it had stopped and the passenger had fled.

Officer Carl Schwartz was also in the area and responded to a call to stop a black male in jeans and a hooded sweatshirt running west on a specific street. Officer Schwartz saw a person matching the description, who was later identified as Varner, cross the street in front of the police car and run south. As Officer Schwartz turned into an alley, he saw Varner climb over a fence and fall into the alley about 100 feet in front of him. Officers Whittaker and Lego also drove into the alley in time to see Varner fall over the fence. Officer Whittaker saw a black item fall off Varner's waistband as he landed in the alley.

Varner got up and kept running while Officer Schwartz got out of his squad car and gave chase. Officer Schwartz noticed a small black case on the ground as he ran by the location where Varner came over the fence. As Varner ran across a gravel driveway by a blue car, he fell again. Officer Schwartz did not see anything drop from Varner when he fell, but the officer saw a brown-handled semi-automatic handgun lying in the gravel as he ran by the car where Varner had fallen. Officer

Schwartz continued to chase Varner for approximately another half-block, yelling at him to stop, before Varner finally complied. Officer Schwartz detained Varner until Officer Lego arrived to arrest Varner.

Officer Schwartz, Officer Whittaker, and another officer retraced the path Varner ran in order to recover any items Varner may have dropped and to take photos of the route. Near the blue car, the officers recovered the firearm Officer Schwartz had seen as he chased Varner. Approximately 12-14 inches away from the firearm the officers also found a crack pipe. As the officers continued to follow the route, they found a black cell phone case where Varner had jumped over the fence. The case contained a credit card with Varner's name on it. The officers also recovered a green lighter and two black shoes.

A grand jury charged Varner with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the two-day jury trial, four officers involved with apprehending Varner testified. Two analysts who tested the firearm for fingerprints and DNA evidence also testified that the tests were negative. The person who owned the house and the blue car next to where the police recovered the firearm also testified that the gun was not his and that nobody in his household owned a firearm. Finally, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives stated the weapon was manufactured in France and traveled in interstate and foreign commerce.

Before trial, Varner filed a motion in limine to exclude evidence that a crack pipe was found in the alley near the gun under Rule 404(b) of the Federal Rules of Evidence. The district court denied the motion. At the close of the government's case, Varner moved to dismiss the case pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing a reasonable jury could not conclude Varner possessed the firearm. The district court also denied that motion. The jury subsequently found Varner guilty.

At sentencing Varner argued for a downward departure due to extraordinary physical impairments under U.S.S.G. § 5H4.1. The Presentence Report (PSR) noted Varner suffered from serious back problems after being robbed by two assailants in February 2010. During the robbery, Varner was rammed into a door frame and kicked repeatedly in the back. Consequently, he was diagnosed with mobile spondylolisthiesis. The PSR indicated Varner experiences significant pain when sitting and standing. He cannot stand or walk for more than seven or eight minutes without experiencing pain. The district court denied Mr. Varner's motion and imposed a sentence of 235 months (19 years and 7 months), the bottom of the advisory range. This appeal follows.

## II. Discussion

On appeal, Varner argues (1) the evidence was insufficient to support the verdict, (2) the district court abused its discretion in admitting evidence of the crack pipe, and (3) the district court abused its discretion at sentencing by declining to depart or vary downward on account of his physical condition.

### A. Sufficiency of the Evidence

"[T]his court reviews the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Johnson*, 639 F.3d 433, 437 (8th Cir. 2011). We will sustain a jury's verdict "if any rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Kelly*, 625 F.3d 516, 518 (8th Cir. 2010) (quotation omitted).

Varner was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Under the statute, the government must prove the

defendant (1) had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, (2) knowingly possessed a firearm, and (3) the firearm was in or effecting interstate commerce. 18 U.S.C. § 922(g)(1); *see also United States v. Cowling*, 648 F.3d 690, 700 (8th Cir. 2011) (listing elements). The only element Varner contests is whether the evidence was sufficient to prove he knowingly possessed a firearm. Varner argues the evidence was insufficient because there was no direct or forensic evidence that he possessed the firearm, and because the officers' testimony was unreliable.

This court has frequently stated that a juror could reasonably conclude a defendant fled from the police because they illegally possessed a firearm. *See, e.g.*, *United States v. Garrett*, 648 F.3d 618, 623 (8th Cir. 2011) ("The jury could infer from [the defendant's] actions of fleeing the scene of the traffic stop and the testimony about the gun that he unlawfully possessed the firearm and elected to discard it to avoid criminal penalties."); *United States v. Arrington*, 215 F.3d 855, 857 (8th Cir. 2000) ("[a] juror could reason that [the defendant's] possession [of a firearm] was the explanation for his dangerous and lengthy flight from police." (quotation omitted)). Here, the vehicle Varner was in drove away from the apartment building after being ordered to stop three times by a police officer. After the vehicle was out of sight of the police, the driver stopped and Varner fled—leaving the passenger door open and his shoes behind in the process. Varner then ran across a street in front of a police car, through a yard, jumped a fence into an alley, and continued to run away from the police. Shortly after he fell next to the blue car, Varner stopped running and surrendered. The firearm was recovered from the same location where Varner fell next to the blue car, and Officer Schwartz saw the gun in that location as he ran by in pursuit of Varner. From this series of events, a jury could reasonably conclude Varner was fleeing the police because he illegally possessed a firearm and only stopped after he divested himself of the weapon. Moreover, the location of the firearm indicates that Varner lost or discarded it during the chase.

-5-

Varner also argues the evidence was insufficient due to the lack of forensic evidence linking him to the firearm. However, forensic evidence is not necessary for a conviction. *See, e.g.*, *United States v. Butler*, 594 F.3d 955, 965 (8th Cir. 2010) (rejecting sufficiency claim where defendant argued there was no forensic evidence). Both analysts who tested the firearm for forensic evidence testified the failure to find forensic evidence on the weapon was inconclusive and that such results were not out of the ordinary. One analyst stated he recovers identifiable fingerprints in only one percent of cases, and the other analyst testified to finding a DNA profile about half the time. A reasonable jury could have concluded the lack of forensic evidence was merely inconclusive and convicted Varner based on other evidence.

Varner also challenges the credibility of the police officers, pointing to slight discrepancies in their testimony, including how Varner fell when he went over the fence, and the exact route of his flight. However, his arguments go directly to the officers' credibility as witnesses—a determination that is uniquely within the province of the jury. *See United States v. Tate*, 633 F.3d 624, 629 (8th Cir. 2011) (The jury is "the final arbiter of witness credibility." (quotation omitted)). "[W]e have made it clear that a jury's credibility determinations are virtually unassailable on appeal, and we must presume that the trier of fact resolved any conflicts in favor of the Government." *United States v. Lowen*, 647 F.3d 863, 869 (8th Cir. 2011) (quotations omitted). Varner had the opportunity to highlight any potential discrepancies with the officers' testimony during trial and the jury presumably chose to believe the officers. We will not second guess their decision on appeal.

## B. Admission of Evidence

Varner also argues the district court abused its discretion in admitting evidence of the crack pipe. This court reviews a district court's decision to admit evidence over an objection for abuse of discretion. *United States v. Marquez-Alvarado*, 501

F.3d 971, 974 (8th Cir. 2007). "[G]reat deference" is given to the district court's Rule 403 balancing. *United States v. Banks*, 553 F.3d 1101, 1107 (8th Cir. 2009).[2]

Rule 403 permits the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. Varner argues admission of the crack pipe would cause the jury to presume he was a drug user and make it likely the jury would convict Varner based on his drug use.

The crack pipe was one of a series of items alleged to have been dropped by Varner in his flight from the police. It was found approximately 14 inches from the firearm, and Varner surrendered to the police only after losing possession of both illegal items. Given the location it was found and the trail of discarded items, the crack pipe had probative value to the government's case. Any potential prejudicial effect was also minimized by the district court's instructions to the jury. We conclude

---

[2]Varner filed a motion in limine arguing the crack pipe should be excluded under Rule 404(B) as character evidence of prior bad acts and because admission of the crack pipe was substantially more prejudicial than probative in value. *See* Fed. R. Evid. 404(B). Varner did not explicitly raise Rule 403, which permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." *See* Fed. R. Evid. 403. However, our caselaw has balanced the probative value and prejudicial effect of evidence in our Rule 404(B) analysis. *See, e.g.*, *United States v. Stenger*, 605 F.3d 492, 499 (8th Cir. 2010); *United States v. Maestas*, 554 F.2d 834, 836–37 n.2 (8th Cir. 1977); *cf.* Fed. R. Evid. 404(b) advisory committee's note ("The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decision of this kind under Rule 403."). The district court ruled on the potential prejudicial effect of admitting the crack pipe when it concluded the evidence was not 404(B) evidence. Therefore, even though Rule 403 was not explicitly raised in the district court, the issue was preserved for appeal.

the district court did not abuse its discretion in determining the probative value of the crack pipe outweighed the potential prejudicial effect.

## C. Downward Departure

Finally, Varner argues the district court erred by not granting a downward departure under U.S.S.G. § 5H1.4 on account of his back injuries. Under the advisory guidelines, we generally will not review the district court's refusal to grant a downward departure "unless the district court had an unconstitutional motive or erroneously thought that it was without authority to grant the departure." *United States v. Heath*, 624 F.3d 884, 888 (8th Cir. 2010) (quotation omitted).

The sentencing guidelines recognize an extraordinary physical impairment as a permissible ground for a downward departure at sentencing. U.S.S.G. § 5H1.4; *see also United States v. Coughlin*, 500 F.3d 813, 817–19 (8th Cir. 2007) (concluding the district court clearly erred in granting a downward departure under U.S.S.G. § 5h1.4). Varner requested a downward departure based on significant pain from back injuries he sustained when two assailants robbed him. The district court discussed Varner's back injury and medical history at length during sentencing in the context of a potential downward departure under U.S.S.G. § 5H1.4. The district court was aware of the authority to grant such a departure and chose not to do so, but gave Varner a sentence at the bottom of the applicable guidelines range. No constitutional violation was shown. While the defendant suffers a serious physical disability to his back, the issue of sentencing him below the guidelines or not fell within the district court's discretion.

### III. Conclusion

Accordingly, we affirm.

_____