# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1215
_____

United States of America

*Plaintiff - Appellee*

v.

Elsa Solis

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 28, 2018
Filed: February 13, 2019
[Published]
_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.
_____

PER CURIAM.

Elsa Solis was convicted of conspiring to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1); possession with intent to distribute methamphetamine in violation of §§ 841(a)(1) and 841(b)(1)(A) (Count 2); and misprision of a felony in violation of 18 U.S.C. § 4 (Count 3). She appeals, arguing that the evidence was insufficient to

support her convictions, that the Fifth Amendment bars her misprision conviction, and that the district court erred in refusing to give her proposed "mere presence" jury instruction. We affirm in part and reverse in part.

## I. Background

The Drug Enforcement Administration (DEA) began investigating a methamphetamine trafficking ring in Batesville, Arkansas, in December 2014. Solis held title to one of the four houses under DEA surveillance. She lived in the house with five individuals: her three children; her boyfriend, Ivan Pedraza (Pedraza); and her boyfriend's brother, Fredy Pedraza (Fredy), who served as the methamphetamine "cook." Solis was also the registered owner of four vehicles used by the Pedrazas in conducting drug deals and investigated by the DEA. During a controlled purchase on May 13, 2015, Solis sat in the passenger's seat of a car with Pedraza while he exchanged methamphetamine for money with a confidential informant through the passenger's window.

Further evidence of Solis's involvement in the conspiracy included a package addressed to Solis's house containing an air conditioning unit stuffed with methamphetamine, surveillance of Pedraza and Fredy leaving Solis's house to sell drugs and later returning to the house, and intercepted calls between Pedraza and Solis discussing Solis's plan to purchase acetone, which is a cleaning product used to remove adulterants from methamphetamine.

Using one of Solis's vehicles, Pedraza drove Solis and two of her children to Dallas, Texas, on July 17, 2015, where he planned on purchasing ten kilograms of methamphetamine. Before they left, Pedraza called Fredy and asked for some car seats. Fredy responded that the car seats were filled with "stew," a slang term for drugs. Pedraza at first asked him to "take the stew out of them," but later said that he would instead purchase car seats before driving to Dallas.

After Pedraza, Solis, and the children arrived in Dallas, DEA agents intercepted a phone conversation in which Solis asked Pedraza if he had "fix[ed] everything there." An agent testified that Solis was asking whether Pedraza worked out all the details of the drug deal. Solis and Pedraza drove back to Batesville on July 19, 2015. DEA agents informed local law enforcement that Solis's vehicle likely contained cash and methamphetamine, and a state trooper stopped the car for a traffic violation. Solis consented to a search of the vehicle. After the trooper found a cordless screwdriver with a single Phillips bit and a suitcase containing Ziploc bags, he examined the car seats and found them abnormally heavy. Using the cordless drill and the Phillips bit, he disassembled the car seats and found $19,000 in rubber-banded cash and 2.5 kilograms of methamphetamine. He found another $1,796 in rubber-banded cash in Solis's purse.

DEA and local law enforcement agents executed search warrants on the four houses associated with the drug trafficking ring. Agents found $18,000 in cash stashed in various places in Solis's residence. Searches of the sparsely furnished stash houses revealed distributable amounts of methamphetamine, along with Ziploc bags, digital scales, acetone, and a car seat.

Solis was indicted on the counts set forth above. Before trial, Solis requested a jury instruction stating that mere presence in a jointly occupied vehicle would be insufficient to establish possession of illegal substances. The district court declined to include the instruction, finding it duplicative and slightly inaccurate. The jury convicted Solis on all three counts. The district court sentenced Solis to 235 months' imprisonment on the drug distribution offenses and 36 months' imprisonment on the misprision offense, to run concurrently.

## II. Sufficiency of the Evidence

Solis argues that the evidence is insufficient to support her convictions. We review *de novo* the sufficiency of the evidence to sustain a conviction, "viewing the evidence in the light most favorable to the jury's verdict and reversing the verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Ramos, 852 F.3d 747, 753 (8th Cir. 2017) (quoting United States v. Ways, 832 F.3d 887, 894 (8th Cir. 2016)).

Solis argues that her conspiracy conviction must be vacated because the government failed to prove that she had intentionally joined the conspiracy. See id. (elements of conspiracy). We disagree. A reasonable jury could have found that Solis intentionally joined the conspiracy based on the evidence that: she allowed her house to be used to receive drugs and store money; she allowed her vehicles to be used for drug deals; she purchased acetone knowing it would be used to purify methamphetamine; she accompanied Pedraza to Dallas knowing he would purchase methamphetamine there; she allowed her children's car seats to be used to store methamphetamine; and she carried drug proceeds in her purse.

Solis next argues that the government failed to prove that she possessed with intent to distribute methamphetamine. She claims that the evidence did not support a finding that she knowingly possessed the methamphetamine stashed inside the children's car seats. See id. (elements of possession with intent to distribute). The government may prove knowing possession by showing constructive possession—that is, that Solis had both knowledge of and control over the contraband. See United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994). Mere presence or physical proximity alone cannot support such a finding. There must be "some nexus between a defendant and the contraband." Id.

Solis argues that the evidence did not establish a nexus between her and the methamphetamine. She cites our recent decision in United States v. Ramos that evidence of joint occupation of a room in which a firearm was found was, without more, insufficient to support a finding that the defendant constructively possessed that firearm. 852 F.3d at 755. Here, unlike in Ramos, the evidence supported a finding that Solis: knew that Pedraza had purchased methamphetamine in Dallas; allowed Pedraza to store the drugs in her vehicle; knew that the drugs were stashed in her children's car seats; and had access to those car seats. Accordingly, a reasonable jury could find that Solis had knowledge of and control over the methamphetamine. See Johnson, 18 F.3d at 648 (finding a sufficient nexus when the defendant's clothes were in the same bag as the contraband, permitting an inference that he controlled the bag and knew its contents).

Solis next contends that the government failed to prove that she took an affirmative act of concealment necessary to sustain her misprision conviction. We do not reach this issue, however, because we reverse Solis's misprision conviction on Fifth Amendment grounds, as explained below.

### III. Fifth Amendment

Solis argues that the district court erred by entering a misprision judgment against her in contravention of her Fifth Amendment right against self-incrimination. Because Solis raises this argument for the first time on appeal, we review for plain error.[1] See Puckett v. United States, 556 U.S. 129, 135 (2009). "In reviewing for plain error, we have the discretion to reverse the district court if the defendant shows '(1) an error, (2) that was plain, (3) affects substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Fast Horse, 747 F.3d 1040, 1042 (8th Cir. 2014) (cleaned up) (quoting

---

[1]Solis made a different Fifth Amendment argument at trial that she does not raise on appeal.

United States v. Rush-Richardson, 574 F.3d 906, 910 (8th Cir. 2009)). "Usually, for an error to be plain, it must be in contravention of either Supreme Court or controlling circuit precedent." United States v. Lachowski, 405 F.3d 696, 698 (8th Cir. 2005).

The misprision statute provides that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States," is guilty of misprision. 18 U.S.C. § 4. This statutory offense thus requires proof that the defendant knew of the completion of a felony, failed to notify the proper authorities of that fact, and took "'affirmative steps' to conceal" the felony. United States v. Bolden, 368 F.3d 1032, 1037 (8th Cir. 2004). Perhaps predictably, and as this case demonstrates, where the person who "knows" about the felony is also implicated in that same felony, "there are tensions between the Fifth Amendment privilege against self-incrimination and the statutory obligation to provide disclosure." United States v. Caraballo-Rodriguez, 480 F.3d 62, 72 n.7 (1st Cir. 2007).

The superseding indictment in this case charged that beginning in or around the same time period, Solis both (1) was a co-conspirator in the methamphetamine conspiracy (Count 1); and (2) failed to alert the authorities about that very conspiracy, in violation of the misprision statute (Count 3). At trial, the government urged the jury to convict Solis of misprision and conspiracy based on the same conduct. It explained, "[Solis] participated in the conspiracy. She possessed meth. She intended to distribute it, and then she concealed it." The jury's misprision conviction therefore criminally punished Solis for failing to tell authorities about a crime in which she was already involved.

The Fifth Amendment's privilege against self-incrimination, however, guarantees that witnesses will not be "compelled to give self-incriminating testimony"; it forbids "officially coerced self-accusation[s]." United States v. Washington, 431

U.S. 181, 187–88 (1977). And since <u>Hoffman v. United States</u>, it has been settled that this privilege "not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime," provided "the witness has reasonable cause to apprehend danger from a direct answer." 341 U.S. 479, 486 (1951) (holding that a defendant could not be compelled to testify about the whereabouts of a fugitive witness where defendant's answers would have "forge[d] links in a chain of facts imperiling [defendant] with conviction of a federal crime"). Under <u>Hoffman</u>, therefore, it is plain that the government cannot use the misprision statute to require someone to report a crime—an essential element of misprision—where doing so reasonably could lead to that individual's own prosecution. Accordingly, it was error to charge, and convict, Solis on the misprision count, and that error violated a substantial right: Solis's Fifth Amendment right against self-incrimination.

Our conclusion comports with decisions by the Ninth and Seventh Circuits applying <u>Hoffman</u> to curtail misprision prosecutions under similar circumstances. In <u>United States v. King</u>, the Ninth Circuit held that the Fifth Amendment privilege against self-incrimination precluded a conviction for misprision of a bank robbery because the defendant had reasonable cause to believe that reporting the robbery could lead to his prosecution as an aider and abetter or as an accessory. 402 F.2d 694, 697 (9th Cir. 1968). Similarly, in <u>United States v. Kuh</u>, the Seventh Circuit affirmed dismissal of a misprision charge where the government's evidence showed that, "at the time the duty to disclose [the felony] arose, the defendants . . . were simultaneously involved in criminal conduct" related to the underlying felony, such that they could reasonably believe that "disclosing information as to their knowledge of the [felony] would place them in the position of furnishing the Government with evidence that could lead to their prosecution or conviction." 541 F.2d 672, 677 (7th Cir. 1976); <u>see also</u> <u>United States v. Jennings</u>, 603 F.2d 650, 652 & n.4 (7th Cir. 1979) (following <u>King</u> and <u>Kuh</u>).

-7-

To allow Solis's conviction for misprision to stand would cast doubt on both the fairness and the integrity of the judicial proceedings against her. See United States v. Webster, 84 F.3d 1056, 1067 (8th Cir. 1996) (reasoning that where a properly instructed jury may not have convicted defendant, affirming conviction would seriously affect the fairness, integrity, or public reputation of judicial proceedings); cf. United States v. Huether, 673 F.3d 789, 799 (8th Cir. 2012) (reversing conviction on plain error review where it violated the Double Jeopardy Clause). We therefore exercise our discretion and reverse with instructions to vacate Solis's conviction on this count.

## IV. Jury Instruction

Solis's final contention is that the district court erred by failing to give her proposed "mere presence" instruction. We review the district court's denial of a defendant's proposed instruction for abuse of discretion. United States v. Vore, 743 F.3d 1175, 1181 (8th Cir. 2014). Although "[a] defendant is entitled to a theory of defense instruction if it is timely requested, is supported by the evidence, and is a correct statement of the law," a defendant is not entitled to particular wording "if the instruction actually given by the trial court adequately and correctly covers the substance of the requested instruction." Id. at 1181–82 (quoting United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002)). We consider jury instructions "as a whole and in the context of the trial." Id. at 1182 (quoting Claxton, 276 F.3d at 424).

Solis requested the following instruction:

> Mere presence at the scene of a crime, mere association with another who controls contraband, or the mere knowledge that a crime is being committed is not sufficient to establish that Ms. Solis committed the crime of Possession with Intent to Distribute Methamphetamine. To sustain the charge, there must be some nexus which indicates Elsa Solis had the authority, either jointly with another or solely to herself, to

exercise dominion or control of the contraband, and the intent to exercise that dominion or control.

The district court found the requested instruction duplicative, slightly inaccurate, and unnecessary. It instead instructed the jury that "[e]vidence that a person was present at the scene of an event, or acted in the same way as others or associated with others, does not, alone, prove that the person joined a conspiracy." The court also instructed the jury on the definition of possession. Taken together, the instructions adequately and accurately conveyed the substance of Solis's requested instruction. See Vore, 743 F.3d at 1182 (upholding the district court's rejection of the proposed instruction because the instructions given, identical to those here, were adequate and yielded the "unmistakable implication . . . that something more than mere presence was required in order to convict [the defendant]").

We affirm Solis's convictions on Counts 1 and 2. We reverse with instructions to vacate her conviction on Count 3, and remand for further proceedings as deemed necessary by the district court.

_____