# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3049

_____

United States of America

*Plaintiff - Appellee*

v.

Nico Deshawn Daniels

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: April 18, 2019
Filed: August 5, 2019

_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Nico Daniels was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He raises three issues on appeal, but only one is central to our decision: whether the district court[1] erred by

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

admitting statements he made during his state parole revocation hearing related to possession of the firearm. Because the statements were properly admitted and the remaining alleged errors are harmless in light of Daniels' admissions at the hearing, we affirm.

## I.    Background

On July 30, 2017, the Arkadelphia (Arkansas) Police Department received calls reporting a white female passing counterfeit $100 bills at multiple businesses in the city. Officers reviewed surveillance camera footage from the businesses and observed the woman entering a light-colored Nissan Maxima. Shortly thereafter, officers located the Nissan in a parking lot. Corporal James Shearin pulled his squad car behind the parked vehicle and turned on his lights.

The officers approached the Nissan with their weapons drawn. Inside the vehicle the police found Daniels in the driver's seat, an unnamed black woman in the passenger seat, and Freddie Ezekiel in the back seat. They did not discover the white female suspect in the car or the parking lot. During their interactions with the occupants, the police smelled marijuana inside the vehicle. Corporal Shearin ordered Daniels to exit the vehicle, placed him in handcuffs, and led him to the rear of the vehicle.

Corporal Shearin explained to Daniels why he was being detained and asked him where the white female was. Daniels responded that they dropped her off at Walmart (the "First Statement"). Corporal Shearin then asked Daniels if he had a gun on him, and Daniels denied it (the "Second Statement"). Corporal Shearin asked if there was any marijuana inside the vehicle, and Daniels responded affirmatively (the "Third Statement"). Corporal Shearin did not read Daniels his Miranda rights prior to or during this conversation.

-2-

While Corporal Shearin was busy with Daniels, Sergeant Dean Palmer arrived at the scene. Corporal Shearin placed Daniels in the back seat of Sergeant Palmer's squad car and shut the door. As Sergeant Palmer walked around the parking lot and back toward his squad car, he observed that Daniels was trying to get his attention. Sergeant Palmer opened the door, and Daniels told him that a .38 caliber gun was under the driver's seat in the Nissan (the "Fourth Statement"). Sergeant Palmer also did not advise Daniels of his <u>Miranda</u> rights.

Inside the Nissan, officers found a .38 caliber gun on the floorboard of the driver's seat. Elsewhere inside the car, they found counterfeit money and goods bought earlier that day from the stores that had reported the white female passing counterfeit currency. A while later, Corporal Shearin approached Sergeant Palmer's squad car and Daniels spontaneously said, "Yes, I'm on parole" (the "Fifth Statement").

On August 29, 2017, Daniels appeared at a state parole revocation hearing and made voluntary statements that he had violated the terms of his parole by being a felon in possession of a firearm. While Daniels was without counsel at the hearing, he had been informed two weeks prior to the hearing that he had the right to be represented by counsel. He was also informed of his right to present evidence and to contest evidence and to call witnesses at the hearing. When he appeared at the hearing, he was informed that he was not required to make any statements but that any statement he made could be used against him. At the hearing, Daniels admitted that he possessed the firearm charged in this case and that he had violated his parole in a number of particulars. The court revoked his parole.

In October of 2017, Daniels was charged in federal court with being a felon in possession of a firearm. Daniels moved to suppress the inculpatory statements made to the police. The district court granted Daniels's motion to suppress the Second and Third Statements but denied the motion as it related to the First, Fourth, and Fifth

Statements. Daniels also filed a motion in limine seeking to prohibit the admission of his statements from the parole revocation hearing as well as the official documents from the hearing. After conducting a Rule 403 analysis, the district court granted the motion as to the official hearing documents but denied the motion as to Daniels's personal admissions and statements.

The government also filed a motion in limine seeking to prevent Daniels from introducing evidence of Ezekiel's 2002 conviction for being a felon in possession of a firearm. The district court granted the motion. Daniels appeals the district court's rulings on both motions in limine, as well as the denial of his motion to suppress the Fourth and Fifth Statements.

## II. Discussion

### A. Revocation Hearing Statements

We review the district court's denial of a motion in limine for abuse of discretion. United States v. Condon, 720 F.3d 748, 754 (8th Cir. 2013) (citation omitted). For a Rule 403 challenge, "great deference is given [to] the district court's balancing of the probative value and prejudicial impact of the evidence." United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007) (alteration in original) (quoting United States v. Ruiz, 412 F.3d 871, 881 (8th Cir. 2005)).

Daniels argues that under United States v. Ramos, 852 F.3d 747 (8th Cir. 2017), statements made at a revocation hearing have limited probative value because respondents at such hearings have limited rights. Because the portion of Ramos relied upon by Daniels, Section II.B, was the opinion of a single judge, it does not constitute an opinion of the court that binds this panel. See id. at 758 (Arnold, J., concurring). In any event, Section II.B of Ramos is distinguishable from the facts of this case.

In Section II.B, Judge Kelly wrote that while "a defendant's admissions are usually considered highly probative," Ramos's signed Waiver of Revocation Hearing as an exhibit in his trial failed the Rule 403 balancing test for three reasons. Id. at 756 (Kelly, J., opinion). First, Ramos was not afforded "the full panoply of rights applicable to a criminal trial," where he was neither represented by counsel nor under oath. Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 499 (1972)). Second, the presence of an official seal on the waiver gave it "the imprimatur of the judicial system and indicia of official reliability," thereby creating a strong possibility that a jury would give it disproportionate weight. Id. (citation omitted). Finally, the waiver was ambiguous with regard to which of the ten separate parole violations Ramos had admitted. Id. at 756–57.

The district court did not err in finding that "the concerns noted in Ramos regarding a lack of process are not present in this case." Daniels did not waive the revocation hearing. He proceeded to hearing and testified voluntarily under oath after being informed of his right to counsel and his right to remain silent and being warned that any statements he made could be used against him in the revocation proceeding and other criminal proceedings. After this advisement, Daniels voluntarily made the inculpatory statements. The statements at issue here were not ambiguous. Daniels specifically admitted he had committed the parole violation of possession of a firearm by certain persons. He apparently proceeded to hearing to deny committing a separate violation. In any event, there is no concern here about any prejudice related to official imprimatur and undue weight because all official hearing documents were excluded.

We have previously upheld the introduction at trial of admissions made by defendants at parole revocation hearings. See United States v. Walrath, 324 F.3d 966, 970 (8th Cir. 2003) (holding that the district court did not abuse its discretion in admitting three parole revocation documents because the prejudicial effect of the documents did not substantially outweigh their probative value); United States v.

Anderson, 674 F.3d 821, 828 (8th Cir. 2012) (holding that testimony from a searching officer combined with testimony the defendant gave at his parole revocation hearing sufficiently supported the jury's determination that he knowingly possessed ammunition). Because the admissions of the defendant are usually highly probative, we allow them to be received unless the "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. None of these dangers exists here. The district court did not abuse its discretion in admitting Daniels's statements.

## B.    Reverse 404(b) Evidence

Daniels next contends that the district court abused its discretion when it granted the government's motion in limine to exclude Ezekiel's prior conviction. Daniels asserts that the evidence was proper reverse 404(b) evidence. Under Federal Rule of Evidence 404(b), "[e]vidence of prior bad acts may not be introduced to prove a person's . . . propensity to commit a crime but may be admissible for another purpose, such as proving knowledge or intent." United States v. Battle, 774 F.3d 504, 512 (8th Cir. 2014) (citing Fed. R. Evid. 404(b)(2)). Rule 404(b) usually applies to the government's introduction of evidence against a defendant; however, it can also apply in the opposite direction where a defendant wishes to introduce evidence against a third party to exculpate himself. Id. In Battle, we held that the defendant could not introduce evidence of another passenger's extensive list of prior convictions and other criminal acts because it "was not relevant to the issue of [the defendant's] knowing possession of [a] firearm" found in the car. Id. at 513–14.

We need not determine whether this case is distinguishable from Battle nor whether the district court abused its discretion. Because Daniels admitted at his parole revocation hearing to possessing the firearm, any error is harmless. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect

-6-

substantial rights must be disregarded."). The fact that Ezekiel illegally possessed a firearm fifteen years before trial would not have impacted the jury verdict in light of Daniels's admission to possessing the .38 caliber handgun in question.

### C.    Fourth and Fifth Statements

Lastly, Daniels argues that the district court erred by denying his motion to suppress the Fourth and Fifth Statements because neither Corporal Shearin nor Sergeant Palmer read him his Miranda rights. "A mixed standard of review applies to the denial of a motion to suppress evidence." United States v. Ford, 888 F.3d 922, 925 (8th Cir. 2018) (quoting United States v. Smith, 820 F.3d 356, 359 (8th Cir. 2016)). We review the district court's findings of fact for clear error and its denial of the suppression motion *de novo*. Id. (citation omitted).

We agree that Daniels should have been Mirandized before any custodial interrogation, and while the gap in time and the switch to a different officer after the initial questioning may arguably render the Fourth and Fifth Statements properly admissible as statements voluntarily offered by Daniels, see United States v. Jackson, 852 F.3d 764, 771 (8th Cir. 2017) (quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966)) ("'Volunteered statements of any kind' are not the product of police interrogation and thus 'are not barred by the Fifth Amendment.'"), we need not reach the question as any error in their admission is harmless due to Daniels's other admissions. During the state court proceedings, Daniels was informed of his right to counsel, his right to remain silent, and his right to a hearing. He elected to proceed to a contested hearing without counsel. At the hearing, he could have asserted that the Fourth and Fifth Statements were taken in violation of his constitutional rights and moved to strike them; instead he elected to make the admission of possession with full knowledge of the potential consequences. These admissions were properly admitted at trial and render any Miranda violation harmless beyond a reasonable doubt.

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____