# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1349
_____

United States of America

*Plaintiff - Appellee*

v.

Jess Brian Ducheneaux

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: October 22, 2021
Filed: December 14, 2021
[Unpublished]
_____

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.
_____

PER CURIAM.

After the district court[1] denied Jess Brian Ducheneaux's renewed motion for judgment of acquittal, the jury convicted him on the following five counts:

_____

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); maintaining a drug-involved premises in violation of 21 U.S.C. §§ 856(a)(1) and 856(b); distribution to a person under age 21 in violation of 21 U.S.C. §§ 841(a)(1) and 859(a); possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and being a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), 924(a)(2), and 924(d). Ducheneaux appeals, arguing that the evidence was insufficient to support the jury's verdict on each count. We affirm.

## I. Background

"We recite the facts in the light most favorable to the jury's verdict." United States v. Flax, 988 F.3d 1068, 1071 (8th Cir. 2021) (quoting United States v. Galloway, 917 F.3d 631, 632 (8th Cir. 2019)).

Ducheneaux lived on a Cheyenne River Reservation-based ranch near Ridgeview, South Dakota. He used methamphetamine on a daily basis. Other methamphetamine users also lived and worked on the ranch, to whom Ducheneaux sometimes provided the drugs they used.

Ducheneaux also used methamphetamine with G.L. and T.H., both minors when they began using with Ducheneaux. Ducheneaux and G.L. began dating in 2015 or 2016. The two used Ducheneaux-provided methamphetamine on an at least monthly basis, often at Ducheneaux's ranch. Ducheneaux also gave her methamphetamine-laden baggies on more than one occasion. Ducheneaux also gave T.H. methamphetamine on multiple occasions, usually at his ranch.

During a traffic stop of Ducheneaux's vehicle in August 2018, officers found therein a straw that tested positive for methamphetamine, as well as two baggies containing white residue on his person. In December 2018, officers went to

-2-

Ducheneaux's home to execute an arrest warrant. During their subsequent search of the house, officers found a scale and 6.12 grams of methamphetamine in a safe, baggies containing white residue, drug paraphernalia, and two firearms.

Ducheneaux was indicted on the counts set forth above. The indictment alleged that Ducheneaux's criminal acts occurred between 2014 and 2018 and identified G.L. as the person under the age of 21 who had received methamphetamine from him. At trial, G.L. and several other individuals who had used methamphetamine with Ducheneaux testified that he had provided them methamphetamine. Other witnesses, all of whom testified under cooperation agreements with the government, testified to selling Ducheneaux methamphetamine during the time period charged in the indictment. Ducheneaux's cousin testified that the two firearms did not belong to Ducheneaux and that he had not seen Ducheneaux with either firearm.

## II. Discussion

"We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences." United States v. Free, 976 F.3d 810, 813 (8th Cir. 2020). We reverse "the verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Shelledy, 961 F.3d 1014, 1019 (8th Cir. 2020) (quoting United States v. Ramos, 852 F.3d 747, 753 (8th Cir. 2017)). "When reviewing the sufficiency of the evidence, we do not weigh the evidence or the credibility of the witnesses." United States v. Johnson, 745 F.3d 866, 869 (8th Cir. 2014). We accordingly reject Ducheneaux's argument that his convictions should be overturned because certain witnesses were unreliable. The jury heard and presumably considered evidence of those witnesses' drug use and/or cooperation agreements in deciding the weight to accord their testimony.

## A. Conspiracy to Distribute

Ducheneaux argues that the evidence was insufficient to support his conviction for conspiracy to distribute a controlled substance because the testimony was vague or inconsistent with regard to whether Ducheneaux had provided the drugs that were shared among users. Although not every witness's testimony was clear, the following witnesses were unequivocal. Kelan Gessinger, who lived near Ducheneaux's ranch and had stayed there on and off in 2015 to help with ranch work, testified:

Q:    When you used meth together who provided the meth that was used?

A:    Sometimes it would be me, sometimes Jess, sometimes whoever else we was using it with.

Trey LaPlante, who had lived and worked at Ducheneaux's ranch in 2016 or 2017, testified:

Q:    Did Mr. Ducheneaux ever give you meth to use?

A:    Not in a bag or anything, but lines or whatever.

T.H., who had first met Ducheneaux at a party at his house in December 2016, testified:

Q:    Did Mr. Ducheneaux ever give you meth to use?

A:    That night?

Q:    Any time.

A:    Yeah.

Q:    How many times did that happen?

A:    Geez, more than—more than a couple times I guess.

A reasonable jury could thus conclude that Ducheneaux had distributed methamphetamine. Ducheneaux's argument that no one testified to purchasing methamphetamine from him or to witnessing such an exchange of money is unavailing. Distribution requires only delivery of a controlled substance, not a sale or exchange; it is "the actual, constructive, or attempted transfer of a controlled substance" that matters. 21 U.S.C. §§ 802(11), 802(8). Compelling evidence supports the jury's finding that Ducheneaux had actually transferred methamphetamine to users for their consumption.

## B. Maintaining a Drug-Involved Premises

Ducheneaux argues that there was insufficient evidence to convict him of maintaining a drug-involved premises because his property was a working ranch. The court instructed the jury that to convict him on this count, it had to find that he "maintain[ed] the place for the specific purpose of distributing or using methamphetamine. The specific purpose need not be the sole purpose for which the placed [sic] is used, but must be one of the primary or principal uses to which the placed [sic] is used." Jury Instruction No. 11. Cf. United States v. Miller, 698 F.3d 699, 706–07 (8th Cir. 2012) (citation omitted) (concluding that maintaining a drug-involved premises under the U.S. Sentencing Guidelines requires that distribution of drugs be one of the "primary or principal uses for the premises," and finding this requirement to be met even when the premises was the defendant's primary residence). In response to the jury's requested clarification of the phrase "one of the primary or principal uses," the court defined it as a "main, chief, key, central, predominant, or basic use."

Based on the evidence presented, a reasonable jury could find that a primary or principal use of the premises was distribution of drugs, even if another primary or principal use of the premises was as a working ranch. Witnesses testified that Ducheneaux had used methamphetamine on a daily basis and regularly shared it with

others on the ranch over a period of several years. A reasonable jury could therefore conclude that distribution was a principal use of the premises.

### C. Distribution to a Person Under Age 21

Ducheneaux argues that the evidence was insufficient to support his conviction for distribution to a person under age 21. The indictment alleged that Ducheneaux distributed methamphetamine to G.L., who was then under 21. Ducheneaux argues that the testimony was vague regarding when events had occurred and who had provided G.L. with methamphetamine. The precise timing of events is not determinative, however, because G.L. was under the age of 21 during the entire period at issue. G.L.'s testimony was sufficient to support the conclusion that Ducheneaux had given her methamphetamine:

Q: Who provided the meth during those times [that you used together]?
A: Jess [Ducheneaux].
....
Q: Other than using meth with you and giving you that meth to use, did Mr. Ducheneaux ever give you meth for your own use?
A: Yes, like a couple of times.
Q: How would those—how would that meth be packaged?
A: Like in a little tiny bag.

On cross-examination, G.L. acknowledged that it was "a little difficult" to remember the events at issue, in particular the dates and quantities of methamphetamine involved. She also agreed, however, that she could be "fairly accurate" in her testimony. Although G.L. agreed that she was "not sure" who had provided the methamphetamine, she stated, "I'm pretty sure it was Jess every time."

Given the number of times G.L. and Ducheneaux used drugs together, her lack of certainty regarding whether Ducheneaux had always provided those drugs did not preclude a reasonable jury from concluding that he had at least sometimes provided them. We thus conclude that G.L.'s testimony was sufficient to allow a reasonable jury to find that Ducheneaux had provided her with methamphetamine while she was under 21 years old.

### D. Possession with Intent to Distribute

Ducheneaux argues that the evidence was insufficient to support his conviction for possession with intent to distribute because the evidence proved only possession for personal use. An officer testified that a user quantity of methamphetamine is 0.2 to 1 gram and that larger quantities, particularly when packaged separately, are associated with distribution or sharing. Ducheneaux asserts that the 6.12 grams of methamphetamine found in his safe was an amount consistent with personal use for someone who lives in the country, an argument that he did not present to the jury. He also argues that the witnesses' testimony showed how much and how often he had personally used methamphetamine, but not that he had had an intent to distribute. A jury could conclude that Ducheneaux had that intent from the testimony that he had given others methamphetamine, possessed 6.12 grams in three separate baggies at the time of the search, and purchased up to 28.35 grams in a single purchase during the relevant period.

### E. Prohibited Person in Possession of a Firearm

Finally, Ducheneaux argues that the evidence was insufficient to support his conviction for possession of a firearm because it did not show that he knowingly possessed the guns. Possession of a firearm can be proved via constructive possession, which "requires both knowledge that the contraband is present and dominion over the premises where the contraband is located." United States v. Ways,

832 F.3d 887, 897 (8th Cir. 2016). To establish knowledge, the government offered an officer's testimony that one firearm was located in the living room, the other in an entryway, that both were in plain view, and that Ducheneaux had in fact led him through that entryway as he went outside to turn off a tractor's engine at the time of his arrest. The government also entered into evidence photographs of the firearms' location within the home. A reasonable jury could have concluded from this evidence that Ducheneaux must have known that the firearms were present in his home.

## Conclusion

The judgment is affirmed.

_____